United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLIED MATERIALS, INC., | No. C 06-7372 MHP |
| Plaintiff, | |
| v. | **MEMORANDUM & ORDER** |
| MULTIMETRIXS, LLC, MARK KESEL, BORIS KESIL, and ELIK GERSHENZON, | Re: Defendants' Motion for Judgment on the Pleadings and Plaintiff's Motion for Award of Attorneys' Fees |
| Defendants. / | |

In this patent case, the court has decided in its prior orders that U.S. Patent No. 6,831,287 ("the '287 patent") is unenforceable due to inequitable conduct and that litigation misconduct occurred during proceedings before this court. Accordingly, the court has determined this case to be an "exceptional case" for purposes of 35 U.S.C. section 285, meriting an award of attorneys' fees and costs to plaintiff Applied Materials, Inc. ("Applied") by defendant MultiMetrixs, LLC ("MultiMetrixs"). Applied now seeks an order allowing it to collect the attorneys' fees and costs from Mark Kesel, Boris Kesil and Elik Gershenzon ("individual defendants"), who are natural persons who acted as principals of MultiMetrixs and who controlled the instant litigation on behalf of MultiMetrixs. Applied previously amended its pleadings to include the individual defendants in its complaint. Now before the court are individual defendants' motion for judgment on the pleadings and plaintiff's motion for attorneys' fees against individual defendants. Having considered the parties' arguments and submissions, the court enters the following memorandum and order.

## BACKGROUND

The court has set forth the detailed facts of this case in its previous orders. *See* Docket No. 115 ("July 2008 Order") at 2-5 (findings of fact); Docket No. 137 ("May 2009 Order") at 1-3. The following is a brief summary of facts relevant to the instant motion.

I.   Fraud on the PTO[1]

Applied is a developer of systems and machines used to manufacture semiconductor wafers. Its "Endura" machine employs a method of depositing metals onto silicon wafers. The original Endura system used a single reflective sensor, but that method was problematic. Allen Lau and Michael Feltsman, both Applied engineers, were assigned to work on a solution. Michael Rosenstein, a manager at Applied who was overseeing the Endura solution project, became acquainted with MultiMetrixs. MultiMetrixs had experience in sensor technology and was capable of producing prototypes. Rosenstein arranged a meeting between the Applied engineers Lau and Feltsman and MultiMetrixs personnel including Kesil and David Margulis. Following an initial meeting in March 2001, Applied and MultiMetrixs corresponded and, eventually, the problem was solved by a two sensor design. Kesil, Margulis and Gershenzon filed patent application number 09/976,890 on October 15, 2001. Based on this application, the '287 patent was granted on December 14, 2004. The patent discloses the use of two sensors placed at the edge of an object in order to detect its position.

During the course of prosecution of the patent, one of the MultiMetrixs inventors, Margulis, died. The date of his death, as shown on his death certificate, was October 10, 2002. The remaining inventors, Kesil and Gershenzon, were aware of Margulis's death. Prosecution of the '287 patent continued notwithstanding the death of David Margulis. Kesil was primarily responsible for corresponding with the PTO regarding prosecution of the patent. His name is listed as the primary contact on most filings, and he spoke directly with the patent examiner in an interview on October 28, 2003.

On December 20, 2002, the PTO issued an office action regarding application number 09/976,890, the application upon which the '287 patent would eventually issue. On June 4, 2003, the inventors responded to the PTO's objections. Even though David Margulis had died the year before, the response was signed by all three purported inventors—Boris Kesil, Elik Gershenzon *and David Margulis*. The amendments in the June 4, 2003, response were accepted by the PTO, and those claims were the claims that eventually issued in the '287 patent.

On March 8, 2004, the PTO mailed a notice of abandonment due to untimely fee payments. The two living inventors, Boris Kesil and Elik Gershenzon, retained counsel, Ilya Zborovsky, to assist in responding to the notice of abandonment. On July 23, 2004, the PTO received a package of materials from Zborovsky including the required fees, a letter requesting that the patent application be revived, and a combined declaration and power of attorney signed by the two living inventors, Kesil and Gershenzon. The PTO inquired why the combined declaration and power of attorney was signed by only two inventors when the original application had three. In response to the PTO's directive to "Please advise on inventorship," a supplemental declaration was filed on November 16, 2004. Pursuant to 37 C.F.R. section 1.67, the supplemental declaration purported "to correct any deficiencies or inaccuracies present in the earlier filed oath or declaration." By providing the signatures of all three inventors listed on the original application including Boris Kesil, Elik Gershenzon *and David Margulis*, the supplemental declaration "corrected" the inaccuracy in the previously filed combined declaration and power of attorney. The patent issued on December 14, 2004, with all three inventors listed. MultiMetrixs was the assignee.

David Margulis, however, had died in 2002, and accordingly could not have signed the supplemental declaration in 2004. Like the signature on the June 4, 2003, response to the PTO's objections to the patent claims, the signature on the November 16, 2004, response to the PTO's query regarding inventorship was a forgery.

II.     Proceedings Before This Court

This action began when Applied brought suit against MultiMetrixs asserting, *inter alia*, that its engineers, Lau and Feltsman, had conceived the invention claimed in the '287 patent. *See* May

3

2009 Order at 1. Applied sought correction of inventorship of the '287 patent pursuant to 35 U.S.C. section 256. MultiMetrixs counterclaimed for infringement of the '287 patent. *Id.* On March 11-14, 2008, the court conducted a bench trial on the issue of inventorship of the '287 patent. *Id.* at 2. During that trial, Applied elicited testimony from Kesil that, in the course of prosecuting the '287 patent, he caused MultiMetrixs to submit forged signatures of David Margulis to the PTO. In light of this testimony, the court *sua sponte* raised the issue of inequitable conduct before the PTO. The court ordered the parties to brief the issue, and oral argument was held on May 21, 2008. *Id.*

On July 22, 2008, the court issued findings of fact and conclusions of law regarding inequitable conduct. The court declared the '287 patent unenforceable by reason of inequitable conduct through the conduct of Kesel, Kesil and Gershenzon. *See* July 2008 Order; Docket No. 116 (Judgment). The court also dismissed MultiMetrixs's counterclaim against Applied for infringement of the '287 patent and granted MultiMetrixs's counsel's motion to withdraw as counsel of record. *See* May 2009 Order at 2. The court ordered that Applied refrain from filing any motions, including its requested motion for exceptional case under 35 U.S.C. section 285 ("section 285"), for thirty days so as to allow MultiMetrixs time to locate substitute counsel. The court also instructed that if MultiMetrixs failed to retain substitute counsel to respond to exceptional case or fee motions, the court would enter default judgment against MultiMetrixs. *Id.*

On August 21, 2008, MultiMetrixs filed a bankruptcy petition to commence a voluntary Chapter 7 bankruptcy case and filed a notice of stay of proceedings with this court under 11 U.S.C. section 362(a). *Id.*; *see also* Docket No. 119 (MultiMetrixs's Notice of Stay of Proceedings). On November 21, 2008, Applied obtained an order from the United States Bankruptcy Court for the Northern District of California, San Jose Division, that modified the automatic bankruptcy stay to permit Applied to proceed in this action. *See* Order Approving Agreement and Stipulation to Modify the Automatic Stay, *In re MultiMetrixs, LLC*, Case No. 08-54635-ASW-7 (Bankr. N.D. Cal. Nov. 21, 2008).

4

On December 3, 2008, Applied filed a motion for an exceptional case finding, a judgment against MultiMetrixs for attorneys' fees and costs incurred up to the court's finding of inequitable conduct, and sanctions against MultiMetrixs's principals Kesel, Kesil and Gershenzon for their personal bad faith misconduct in the action. *See* May 2009 Order at 2-3. Applied also requested that the court hold Kesel, Kesil and Gershenzon jointly and severally liable for the fee award. *Id.* at 3. MultiMetrixs, still without substitute counsel of record, failed to submit an opposition to Applied's motion. MultiMetrixs's former counsel accepted service on behalf of the unrepresented defendant. *Id.*

On January 26, 2009, individual defendants filed a "Statement Re: Applied's Motion for Sanctions Against Non-parties As Individuals." Docket No. 128 (Def.'s Statement). Individual defendants contended that they should be made parties to the proceedings before being subjected to personal liability for fees, relying upon the Supreme Court's opinion in *Nelson v. Adams USA, Inc.*, 529 U.S. 460 (2000). They argued that the *Nelson* case was "squarely on point" because the "facts are 'on all fours'" with this case. *Id.* at 2. On February 2, 2009, an oral hearing was held on the matter and was attended by Applied and counsel for Kesel, Kesil and Gershenzon. *See* May 2009 Order at 3. Counsel for the individual defendants argued that section 285 sanctions could not be awarded against the individuals until they had been joined as parties.

The court held the case to be "exceptional" for the purposes of section 285, held an award of attorneys' fee to be appropriate, and entered a fee award against MultiMetrixs. The court also held that MultiMetrixs, through the actions of individual defendants, had engaged in litigation misconduct. However, the court held that individual defendants had to be added as parties and given an opportunity to respond before they could be subjected to personal liability for attorneys' fees and costs. The court granted Applied leave to amend its complaint to add the individual defendants. Applied then filed and served a First Amended Complaint adding a claim for attorneys' fees against the individual defendants. *See* Docket No. 139 (First Amended Complaint).

5

LEGAL STANDARD

I.  Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Pleadings are closed upon the filing of a complaint and an answer, unless a counterclaim, cross-claim or third-party claim is interposed, or the court orders a third-party answer. Wright & Miller, *Federal Practice and Procedure: Civil 3d* § 1367 (2004); *see* Fed. R. Civ. P. 7(a). A Rule 12(c) judgment on the pleadings is a decision on the merits. *Gen. Conf. Corp. of Seventh Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).

When Rule 12(c) is used to raise the defense of failure to state a claim, the motion faces the same test as a motion under Rule 12(b)(6). *Wood v. County of Alameda*, 875 F. Supp. 659, 661 (N.D. Cal. 1995) (Henderson, J.) (citing *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988)); *see also* Wright & Miller §§ 1367-1369. Judgment on the pleadings is proper "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*, 132 F.3d 526, 529 (9th Cir. 1997) (quoting *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1229 (9th Cir. 1996)). As in a Rule 12(b)(6) or Rule 56 motion, the court views the facts presented in the light most favorable to the non-moving party, construing all reasonable inferences in that party's favor. *See Seventh Day Adventists*, 887 F.2d at 230 (9th Cir. 1989) (citation omitted).

II.  Award of Attorneys' Fees and Costs

In patent actions, a court has the discretion to award reasonable attorneys' fees to the prevailing party in exceptional cases. 35 U.S.C. § 285; *Eltech Sys. Corp. v. PG Indus., Inc.*, 903 F.2d 805, 810-11 (Fed. Cir. 1990). A court's decision as to whether to grant attorneys' fees proceeds in two steps. First, the prevailing party must prove by clear and convincing evidence that the case was exceptional. *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1327 (Fed. Cir. 2003), *cert. denied*, 540 U.S. 1109. A case may be held exceptional where a patentee has committed

6

inequitable conduct in securing the patent, enforced the patent in bad faith, or committed litigation misconduct. *See, e.g.*, *Bruno Indep. Living Aids, Inc. v. Acorn Mobility Svcs., Ltd.*, 394 F.3d 1348, 1355 (Fed. Cir. 2005) (inequitable conduct); *Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1377-78 (Fed. Cir. 2001) (bad faith litigation); *Rambus Inc. v. Infineon Tech. AG*, 318 F.3d 1081, 1106 (Fed. Cir. 2003), *cert. denied*, 540 U.S. 874 (litigation misconduct); *see generally* Schwartz & Goldman, *Patent Law and Practice* § 8.V (6th ed. 2008). If the court finds the case to be exceptional, the court must then determine whether an award of attorneys' fees is appropriate. *Forest Labs.*, 339 F.3d at 1328. An award of attorneys' fees is not an ordinary remedy and should be limited to circumstances in which it is necessary to prevent gross injustice. *Id.* at 1329.

The court also has inherent authority to impose fees as sanctions for bad faith litigation conduct. Under "narrowly defined circumstances, federal courts have inherent power to assess attorney's fees against counsel," even though the so-called "American Rule" prohibits fee shifting in most cases. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (quoting *Roadway Express, Inc., v. Paper*, 447 U.S. 752, 765 (1980)); *see also Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 259 (1975).

DISCUSSION

On September 15, 2009, individual defendants filed a motion for judgment on the pleadings requesting dismissal of the First Amended Complaint. On October 5, 2009, Applied filed a motion for an award of attorneys' fees against the individual defendants.

I.  Judgment on the Pleadings

As a threshold matter, individual defendants move the court to dismiss the First Amended Complaint pursuant to Rule 12(c), alleging that adding individual defendants as parties is improper for the purposes of awarding attorneys' fees against them. Individual defendants advance five arguments.

Firstly, individual defendants argue that Applied has filed an impermissible "supplemental" complaint and that the court accordingly lacks jurisdiction to proceed. The Federal Rules of Civil

7

1 Procedure define an "amended" pleading as one reciting facts existing at the time an original
2 complaint was filed but which were not then pleaded and a "supplemental" pleading as one alleging
3 facts occurring after the filing of the original complaint. *See* Fed. R. Civ. P. 15. Individual
4 defendants argue that Applied has filed a pleading alleging misconduct by the individual defendants,
5 all of which occurred after the original complaint was filed. Plaintiff's "amended" complaint is
6 therefore actually a "supplemental" complaint according to individual defendants. Individual
7 defendants rely on *Planned Parenthood v. Neely*, 130 F.3d 400 (9th Cir. 1997), to argue that a
8 plaintiff must bring a separate action when a case has been closed and cannot simply file a
9 supplemental complaint to enjoin judgment on non-parties. Although individual defendants devote a
10 significant portion of their moving papers to the argument that Applied's First Amended Complaint
11 is not in fact an amended complaint, but rather a supplemental complaint, the label attached to the
12 complaint is immaterial in this case for several reasons. Firstly, the action is not closed. The court
13 continues to have jurisdiction after issuing judgment on the merits for the purposes of addressing
14 attorneys' fees. Secondly, the amended complaint alleges both facts that occurred prior to the filing
15 of the original complaint and facts that occurred after the original complaint was filed such as
16 individual defendants' litigation misconduct. Thirdly, as a practical matter, the only difference
17 between amended and supplemental pleadings is whether the court's permission is necessary before
18 filing; a party may amend its pleadings as a matter of course within a certain time period, whereas
19 the party must always seek leave of the court to file a supplemental pleading. *Compare* Fed. R. Civ.
20 P. 15(a) *with* Fed. R. Civ. P. 15(d). Here, the court granted Applied leave to amend its complaint.

21 Moreover, *Planned Parenthood* is inapposite because Applied is not seeking to reopen a
22 stale, unrelated matter from years ago but an action that is still active. In *Planned Parenthood*, the
23 plaintiffs had obtained a final injunction in 1989 against Arizona's parental consent abortion statute.
24 130 F.3d at 401-402. When the Arizona legislature reenacted that statute four years later, the
25 plaintiffs sought to revive the suit by supplementing their original 1989 complaint. *Id.* at 402. The
26 Ninth Circuit held that the plaintiffs could not simply reactivate their previous action by
27 supplementing the old complaint; they had to initiate a new lawsuit. *Id.* Unlike the *Planned*
28

8

1 *Parenthood* defendants, Kesel, Kesil and Gershenzon did not challenge the court's order granting
2 Applied leave to amend its complaint. In fact, individual defendants insisted that the complaint
3 needed to be amended to add them as parties to the case before any sanctions could be brought
4 against them. *See* Docket No. 136 (Tr. of Feb. 2, 2009, Proceedings) at 7, 10-11. In addition, the
5 factual allegations regarding individual defendants' misconduct that arose prior to, and during, the
6 course of this litigation are very different from the facts of *Planned Parenthood*.

7 Secondly, individual defendants argue that the court's reliance on *Nelson* in allowing
8 Applied to file an amended complaint was misplaced. Individual defendants now argue that the
9 facts of this case do not parallel those of *Nelson* and, as such, there is no basis upon which to grant
10 Applied leave to amend the original complaint. The *Nelson* case was a patent infringement action
11 between two corporations. As in the present case, attorneys' fees were first awarded against a
12 corporate plaintiff asserting a patent. Fearing that the corporate plaintiff would soon become
13 insolvent, the defendant sought to impose the fee award on the corporate plaintiff's principal,
14 Nelson, in post-judgment proceedings. Because Nelson had not received the benefit of the "10 days
15 after service of the amended pleading" to plead in response, the Supreme Court held that subjecting
16 Nelson to liability as soon as he was made a party was in error. *Id.* at 464-466. The Court required
17 that Nelson be added as a formal party before fees were awarded against him, but the Court also
18 specifically noted that its decision "surely does not insulate Nelson from liability." 529 U.S. at 472.
19 The due process considerations reflected in Rules 12 and 15 "required that Nelson be given an
20 opportunity to respond and contest his personal liability for the award after he was made a party and
21 before the entry of judgment against him." *Id.* at 463.

22 *Nelson* is squarely on point, and it imposes due process limitations upon the award of
23 attorneys' fees and sanctions in this action. The Supreme Court held that due process considerations
24 of Rule 15 require that "when a court grants leave to amend to add an adverse party after the time for
25 responding to the original pleading has lapsed, the party so added is given" at least ten days to
26 respond. *Nelson*, 529 U.S. at 466. Here, individual defendants have had substantially more than ten
27 days—enough time to file a motion for judgment on the pleadings, a reply to plaintiff's opposition to

9

the motion, and an opposition to Applied's motion for award of attorneys' fees. Individual defendants have had ample opportunity to respond. Unlike the amended complaint in *Nelson*, plaintiff's First Amended Complaint does not subject individual defendants to personal liability without a fair opportunity to respond.

Thirdly, individual defendants argue that patent law requires that they are named as parties in the original complaint because this action was a patent-related action that gave rise to attorneys' fees. Firstly, the court can assess attorneys' fees against the individual defendants independently of the other patent claims pursuant to section 285. It is well established that a claim for attorneys' fees under section 285 is a separate, standalone claim that can be resolved by the court even if all of the accompanying patent claims have been dismissed or withdrawn. *See Imagineering, Inc., v. Van Klassens, Inc.*, 53 F.3d 1260, 1262-63 (Fed. Cir. 1995), *cert. denied*, 116 S.Ct. 277. The mere fact that a party is a representative of a corporation does not necessarily provide immunity from liability for his misconduct, and the court has already determined that the individual defendants acted with intent to deceive in their representations to the PTO. Secondly, even if the court did not have the power to sanction, Applied has asserted patent claims against the individual defendants for committing inequitable conduct. Federal Rule of Civil Procedure 15(b)(2) provides that a party may amend the pleadings even after judgment "to conform them to the evidence and to raise an unpleaded issue" that was tried by the parties' express or implied consent. The court has held that individual defendants are responsible for inequitable conduct and misrepresentations to the PTO.

Fourthly, individual defendants contend that the allegations of the amended complaint fail to state any legally cognizable claim because the allegations regarding individual defendants' conduct describe their conduct after the original complaint was filed. Individual defendants argue that the only allegations against them are that non-party witnesses did bad acts. This is another way of suggesting that individual defendants have been improperly dragged into a matter in which they had no real involvement. As indicated previously, the court granted Applied leave to amend the pleadings based on evidence of individual defendants' misconduct presented at trial. Individual defendants were in control of the litigation. As in *Nelson*, it was the conduct of MultiMetrixs's

10

1 principals Kesel, Kesil and Gershenzon on behalf of MultiMetrixs that led this court to find
2 inequitable conduct before the PTO. *See* May 2009 Order at 8. Due process required only that
3 Kesel, Kesil and Gershenzon be named as parties and given the opportunity to respond and be heard
4 before being subjected to a judgment of personal liability. *Id.*; *see also Nelson*, 529 U.S. at 461.
5 These requirements have now been met.[2]

Finally, individual defendants argue that they have absolute immunity from civil penalties for their testimony in connection with the trial. However, there is no immunity from liability for sanctions for false testimony, and courts routinely assess monetary sanctions against parties who lie in judicial proceedings. *See, e.g.*, *Chambers v. Masco*, 501 U.S. 32, 42, 57-58 (1991) (affirming district court's award of sanctions for misconduct that included lying to and misleading the court). The cases that individual defendants cite relate only to immunity of public officials from civil damages liability under 28 U.S.C. section 1983. *See Briscoe v. LaHue*, 460 U.S. 325 (1983); *Rolon v. Henneman*, 517 F.3d 140 (2d Cir. 2008). These cases are inapposite because, *inter alia*, Applied has not brought a separate suit seeking a civil damages award for defendants' false testimony. Here, individual defendants have both lied under oath and committed other types of litigation misconduct. They are not immune from the imposition of sanctions or attorneys' fees.

II.     Award of Attorneys' Fees

The court has authority to sanction individual defendants under section 285.[3] A claim for attorney's fees under section 285 "must be made by motion" as provided for in Rule 54(d)(2). *See IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1386 (Fed. Cir. 2005). There is no need for an evidentiary hearing or summary judgment proceedings; Rule 54(d)(2) requires only that individual defendants have an opportunity to make adversary submissions, including affidavits or deposition excerpts, in opposition to Applied's fee motion. Fed. R. Civ. P. 54(d)(2)(C); *see also* Fed. R. Civ. P. 43(c). Individual defendants are entitled to an opportunity to be heard, but "an opportunity to be heard does not require an oral or evidentiary hearing on the [sanctions] issue." *Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000). Sanctions have been awarded against non-parties on noticed motion. *See, e.g.*, *Lockary v. Kayfetz*,

11

974 F.2d 1166, 1169-70 (9th Cir. 1992). Plaintiff has filed a motion for attorneys' fees, and individual defendants have been given sufficient notice. They have responded to the motions and submitted well-prepared memoranda drafted by competent attorneys. *See* Docket No. 159 (Order Submitting Motions on the Papers Without Oral Argument, entered Nov. 13, 2009) (noting that these attorneys did not appear as attorneys of record).

Attorneys' fees may be awarded under section 285 if: (1) the fees will be awarded to the prevailing party, (2) the case is exceptional, and (3) the fees are reasonable. *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1480 (Fed. Cir. 1998). The exceptional nature of the case must be established by clear and convincing evidence. *Machinery Corp. of Am. v. Gullfiber AB*, 774 F.2d 467, 470-472 (Fed. Cir. 1995). Regarding the first requirement, a party prevails when the legal relationship between the plaintiff and defendant is materially altered in a way that directly benefits the prevailing party. Individual defendants do not contest that they controlled the litigation for MultiMetrixs and had a common interest with MultiMetrixs on the inequitable conduct issue. Each individual defendant had a significant ownership interest in MultiMetrixs and the incentive to abuse the litigation process. Trial Tr. 490:12-14, 598:19-599:11, 674:22-23. *See Gentry Gallery*, 134 F.3d at 1480. Where litigation results in a declaration that the patent-in-suit is invalid or unenforceable, the accused infringer has prevailed. *See Manildra Milling Corp. v. Ogilvie Mills Inc.*, 76 F.3d 1178, 1183 (Fed. Cir. 1996). Having found, following a bench trial, clear and convincing evidence of inequitable conduct before the PTO, the court declared the '287 patent unenforceable. Applied is the prevailing party.

Regarding the second requirement, the court has already determined that the case is exceptional. *See* May 2009 Order at 6. The challenged conduct involved not only an affirmative misstatement, but a misrepresentation about inventorship, a core issue in patent law. There is also compelling evidence that the surviving inventors knew the signature of the deceased inventor was forged but submitted the forged documents to the PTO nonetheless. This conduct occurred not once, but twice. Additionally, individual defendants: (1) lied under oath at deposition and trial about the forged signatures submitted to the PTO; (2) lied about the purported conception of the invention; (3)

12

served and verified under oath a knowingly false interrogatory response; and (4) failed to produce relevant documents during discovery. This case involves egregious inequitable conduct and litigation misconduct, and it is exceptional.

Regarding the third requirement, when awarding attorneys' fees a court may award compensatory fees that fully encompass hours reasonably expended on the litigation "[w]here a plaintiff has obtained excellent results." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). Such is the case here. Section 285 also authorizes an award of costs. *Goodwall Constr. Co. v. Beers Constr. Co.*, 991 F.2d 751, 759 (Fed. Cir. 1993). Applied seeks attorneys' fees in the amount of $1,374,994.50. The court has previously held that Applied's counsel's billing rates are reasonable. May 2009 Order at 7. Applied also seeks costs in the amount of $52,934.44. These costs span the time from inception of litigation to the date of the court's inequitable conduct order. The court held that the quantum of fees and costs sought by Applied appears to be reasonable expenditures made for the purpose of this case.

Individual defendants' arguments against an award of attorneys' fees are unavailing. Individual defendants cite *Taylor v. Sturgell*, ___ U.S.___, 128 S. Ct. 2161, 2171 (2008), noting that the Supreme Court has recently reiterated the presumption against the preclusive effect of a prior judgment on a non-party to the prior proceeding. However, individual defendants' discussion of the "virtual representation" theory of res judicata as articulated by *Taylor* is misplaced. As stated in *Taylor*, "a nonparty is bound by a judgment if he 'assume[d] control' over the litigation in which that judgment was rendered." 128 S. Ct. at 2173 (alteration in original) (quoting *Montana v. United States*, 440 U.S. 147, 154 (1979)); *see also Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 262, n.4 (1961). Because such a person has had "the opportunity to present proofs and argument," he has already "had his day in court" even though he was not a formal party to the litigation. *Id.* Individual defendants actively participated in the pre-trial and trial of this action and regularly attended the trial and post-trial proceedings. Due to the extent of their involvement and notice of the litigation, individual defendants have had their day in court.

13

Based on the forgoing, the court holds individual defendants jointly and severally liable for the exceptional attorneys' fee award under section 285.

CONCLUSION

Defendants' motion for judgment on the pleadings is DENIED.  Plaintiff's motion for attorneys' fees is GRANTED.  The court's order of May 26, 2009, *see* Docket No. 137, is HEREBY MODIFIED as follows.  Plaintiff may recover attorneys' fees of $1,374,994.50 and costs of $52,934.44 awarded by the court in that order against MultiMetrixs from any or all of the defendants MultiMetrixs, Mark Kesel, Boris Kesil and Elik Gershenzon, who are jointly and severally liable for the total amount of attorneys' fees and costs.

IT IS SO ORDERED.

Dated: November 23, 2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1.      These facts are drawn from the court's findings of fact regarding the MultiMetrixs principals' inequitable conduct. *See* July 2008 Order at 2-5.

2.      Notably, individual defendants do not contest any of the court's factual findings regarding inequitable conduct or litigation misconduct.

3.      The court also has inherent authority to impose fees on individual defendants entirely independent from section 285. In *Chambers*, the Supreme Court affirmed a full attorneys' fee award of nearly one million dollars for bad faith litigation conduct ordered by a trial court pursuant to its inherent authority. 501 U.S. at 40, 55. The Supreme Court held that the full fee was justified by the need to ensure that severe abuses of the judicial system were not repeated. *Id.* at 56. Chambers was sanctioned for a wide range of bad faith conduct, including actions he took before becoming a party to the proceeding. *Id.* In the instant case, individual defendants' misconduct has pervaded the entire series of events pertaining to the '287 patent and the related proceedings in this court, from patent prosecution to the last day of trial.